**54 So.2d 6**

**LAGASSE et al. v. ALLEN.**

**No. 40085.**

June 29, 1951.

Felix W. Gaudin, James J. Grevemberg, New Orleans, for defendant-appellant.

R. A. Dowling, New Orleans, for appellee.

FOURNET, Chief Justice.

The defendant, Edward M. Allen, is appealing from a judgment of the lower court awarding the plaintiffs, Charles F. Lagasse and Sons, $6,148.28, representing the balance allegedly due on the construction of a building at the corner of Canal and N. Broad Streets, New Orleans, pursuant to their agreement based on the following letter addressed to the defendant by the plaintiff: "Re: 101 N. Broad St. and 2701 Canal St. We propose to furnish labor and materials to erect a new building at above address, as per your directions on a 15% cost plus basis, over and above our cost," which bears the word "Approved" followed by the signature of the defendant.

In their petition the plaintiffs allege the cost of construction to be $10,128.94, supported by paid invoices; their supervision fee to be $1,519.34, making a total of $11,-648.28, subject to a credit of $5,500 representing payments on account made by the defendant. For answer the defendant denied that the building cost $10,128.94; averred that he was informed by Mr. Charles Lagasse, senior member of the plaintiff partnership, that it would cost approximately $5,000 to build, and that he had obtained estimates from contractors who state that it could be reproduced for $7,500 or less; also, that Mr. Lagasse failed to comply with his agreement to obtain at least three bids on each subcontracting job and to submit these to defendant for approval. Defendant professes his willingness to pay any balance which may be found to be due after full hearing.

The building is a 30' x 30' frame structure with cement base and plaster interior, designed to be used as a restaurant. Before work could be commenced it was necessary that old paving and concrete foundations be removed and that a small amount of excavation and grading be done. The foundation is of concrete, with brick walls to retain the cement floor, and the front is embellished with structural glass and monel metal. The floor of a so-called shed, added at defendant's direction during the progress of construction, is also paved.

In support of his contention that the cost is too high, the defendant offered the testimony of two contractors: Mr. Lester Lamb of the Lamb Construction Company, who stated he had made a careful examination of the structure and in his opinion this type of building, without the shed, could be reproduced for $5 per square foot, or $6,000, and that the shed would cost $1,500 extra; and Mr. William Winslow, a general contractor, who testified he could reproduce the building and shed out of lumber for $7,000. It is noted, however, that the first witness did not include the cost of clearing the lot and making it ready for the start of construction, nor did he state he could duplicate the structure for material, quality, etc. The second witness shows a total lack of knowledge of the materials which went into the building or familiarity with the completed structure. It appears.

that he was consulted by the defendant before this work was undertaken and his estimate is based on the type of building defendant originally had in mind. On cross examination he admits he would not say he could duplicate the present building for $7,000.

The record discloses that in some instances the plaintiff secured bids from subcontractors, and in other cases he did not. In any event, he emphatically denies that he promised to secure three bids on each subcontracting job and submit these for defendant's approval, and while the defendant's testimony concerning such a promise is corroborated by Mr. Thomas Scandaliato and Mr. John Truett, who at the time of the contract were engaged in a joint business venture with defendant, the latter must be held to have waived the requirement by his subsequent course of action. He was at the premises almost daily during the progress of construction, saw what was being done, knew that bids had not been submitted for his approval, but made no protest. We are fortified in this conclusion by the fact that when the building was nearing completion the defendant made two payments on account, totaling $5,500, without mentioning plaintiffs' failure to submit bids—at which time he obviously realized the building was costing more than had been anticipated, for according to his own testimony he suggested only that the plaintiff stop the work.

We are in agreement with the observation in the brief of counsel for defendant (who did not appear to argue the case) that "On a cost-plus contract, the contractor is obligated to give supervision and to use his utmost endeavors to see that the owner gets value received," but his efforts to show that the plaintiff failed in this respect are unsuccessful. In fact, the defendant states that he is satisfied with the job and makes no complaint of the workmanship or materials furnished. The trial judge found for the plaintiff in the full amount claimed to be due on the contract, and a careful examination of the record fails to disclose that his conclusion was erroneous.

For the reasons assigned, the judgment appealed from is affirmed.